**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 22 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

TORIBIO MIGUEL DE LA CRUZ-
TAPIA,

      Defendant-Appellee,

No. 97-2376

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-97-462-LH)

---

Presiliano Torrez, Assistant U.S. Attorney (John J. Kelly, United States Attorney, and Steven C. Yarbrough, Assistant U.S. Attorney, on the brief), Las Cruces, New Mexico, for Plaintiff-Appellant.

Robert J. McDowell, Assistant Federal Public Defender (Ann Steinmetz, Federal Public Defender, with him on the brief), Las Cruces, New Mexico, for Defendant-Appellee.

---

Before **SEYMOUR**, Chief Judge, **PORFILIO** and **BRORBY**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

The United States government appeals from an order of the district court granting defendant Mr. De la Cruz-Tapia's motion to suppress evidence seized during a United States Border Patrol stop of his vehicle. The district court held that the facts did not support a reasonable suspicion for the stop, thereby violating Mr. De la Cruz-Tapia's Fourth Amendment right. We affirm.

**I.**

On July 9, 1997, around 8 a.m., Agent Joel Nickles of the United States Border Patrol was conducting a roving patrol on Interstate 25 south of Truth or Consequences, New Mexico. Agent Nickles was parked in an unmarked jeep in the median when Mr. De la Cruz-Tapia drove by in a 1977 Chevrolet. Agent Nickles observed that Mr. De la Cruz-Tapia was an Hispanic male sitting in an upright position and staring straight ahead. Agent Nickles caught up to the vehicle, and drove along side it while he radioed for a license plate check.

Before Agent Nickles received any information from the check, the vehicle exited into the town of Truth or Consequences at Exit 79. Agent Nickles, who was in the left lane of traffic at the time, was unable to follow the vehicle. He subsequently made a u-turn in the median and took Exit 79 southbound into Truth or Consequences in search of the vehicle.

Agent Nickles located the vehicle parked in plain view in the parking area of a Chevron gas station. The trunk and hood were open and Mr. De la Cruz-

Tapia was standing in front of the car. Agent Nickles pulled into a nearby parking lot to observe the situation. Agent Nickles received information over the radio that the vehicle was registered to an Antonio Torres in Columbus, New Mexico, that the vehicle was not stolen, and that the vehicle had crossed the United States/Mexico border three times in the past 72 hours.

After spending a period of time at the gas station, Mr. De la Cruz-Tapia closed the hood and trunk, got into his car, and resumed northbound travel on Interstate 25. Agent Nickles radioed another border patrol agent in a marked unit and requested that he stop Mr. De la Cruz-Tapia. Mr. De la Cruz-Tapia's vehicle was stopped and searched near Exit 83 on Interstate 25, and hidden bundles of marijuana were found.

## II.

On appeal of a motion to suppress, we accept the district court's factual findings unless clearly erroneous and view the evidence in the light most favorable to the prevailing party, here Mr. De la Cruz-Tapia. *See United States v. Downs*, 151 F.3d 1301, 1302 (10th Cir. 1998) (citing *United States v. Maden*, 64 F.3d 1505, 1508 (10th Cir. 1995)); *United States v. Wood*, 106 F.3d 942, 945 (10th Cir. 1997). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v.*

*United States Gypsum Co.*, 333 U.S. 364, 395 (1948). "The reviewing court overstepps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. . . . Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (citations omitted).

"'The ultimate determination of reasonableness under the Fourth Amendment is, however, a conclusion of law that we review de novo.'" *United States v. Vasquez-Pulido*, 155 F.3d 1213, 1215 (10th Cir. 1998) (quoting *United States v. Anderson*, 981 F.2d 1560, 1566 (10th Cir. 1992)), *cert. denied*, 119 S. Ct. 437 (1998). We have held that "[i]n determining whether reasonable suspicion exists to justify stopping a vehicle, a court must consider the totality of the circumstances." *United States v. Barbee*, 968 F.2d 1026, 1028 (10th Cir. 1992) (citing *United States v. Sokolow*, 490 U.S. 1, 8 (1989)); *see also United States v. Pollack*, 895 F.2d 686, 689-90 (10th Cir. 1990). "[I]llegal activity does not depend upon any one factor, but on the totality of the circumstances." *Wood*, 106 F.3d at 946. Any one factor may be consistent with innocent travel, but the factors must be "taken together." *Sokolow*, 490 U.S. at 9.

In examining the totality of the circumstances, "[c]ommon sense and ordinary experience are to be employed and deference is to be accorded to a law enforcement officer's ability to distinguish between innocent and suspicious

actions." *Wood*, 106 F.3d at 946 (citation omitted).  However, the officer must articulate more than an "'inchoate and unparticularized suspicion or "hunch."'" *Sokolow*, 490 U.S. at 7 (quoting *Terry v. Ohio*, 392 U.S. 1 (1968)).  Moreover, we have held that "'[s]ome facts must be outrightly dismissed as so innocent or susceptible to varying interpretations as to be innocuous.'"  *Wood*, 106 F.3d at 946 (quoting *United States v. Lee*, 73 F.3d 1034, 1039 (10th Cir. 1996)).

We frequently have been asked to review the legality of border patrol stops. *See United States v. Monsisvais*, 907 F.2d 987, 989 (10th Cir. 1990).  While legal standards do not change between reviewing the denial of a motion to suppress and the grant of a similar motion, we recognize that in the latter situation there may appear a false conflict.  Viewing the evidence in the light most favorable to the prevailing party may seem to conflict with the deference owed to the law enforcement agent's judgment.  We do not find this position untenable.  Our standard of review is settled.  The facts must be viewed in the light most favorable to the prevailing party, Mr. De la Cruz-Tapia.  Unless the district court was clearly erroneous in judging the testimony and credibility of Agent Nickles, we will not duplicate the district court's work by superimposing our own fact findings.  In the de novo review of reasonable suspicion, we give due deference to Agent Nickles.

## A.
## Factual Findings

In applying the articulated standard of appellate review to the instant case, we look to the district court's extensive written findings. The record shows that Agent Nickles relied upon the following factors in deciding to stop Mr. De la Cruz-Tapia: (1) the type of car he was driving; (2) his failure to look at Agent Nickles when he drove by; (3) his abrupt exit from the interstate; (4) his behavior at the gas station; and (5) the fact that the vehicle had crossed the international border at Columbus three times in the past three days. Rec., vol. I, doc. 29 at 3. The district court addressed the five points and we will review each finding in turn for clear error.

*(1) Car Type*

The government suggests the age and size of the car is a significantly suspicious factor. Agent Nickles testified that "[o]lder model vehicles like this one are consistent with the trend toward illegal aliens and drug trafficking." Rec. vol. II, at 31. The district court, however, noted Agent Nickles' later testimony that "there's a lot of older model cars on the road." *Id.* at 54. The agent stated that characteristics related to alien and drug transport included heavily-loaded backends and additional passengers. But the evidence indicated that the Chevrolet did not appear heavily loaded, and had no passengers. The car did not swerve or speed, and was legally registered. The district court found nothing

unusual about the car, and found that the make and model were limited in significance.  We find nothing in the record to contradict these findings of fact.

   *(2)  Lack of Eye Contact*

   The government also argues that Mr. De la Cruz-Tapia's lack of eye contact was suspicious, evasive behavior.  The government's argument turns on the factual inference that the driver actually recognized Agent Nickles as part of the border patrol.  To the contrary, the district court found that Mr. De la Cruz-Tapia did not know of Agent Nickles' position, and accordingly, discounted the behavior as non-evasive.  The evidence shows Agent Nickles drove an unmarked jeep, and he testified he was unsure the driver recognized him.  On cross-examination, Agent Nickles was asked, "Even as you're following and you pull up kind of catty-corner to him, you're not even sure then if he is able to recognize you as a border patrol agent?"  To which he responded, "I can't say for sure that he recognized me, no." *Id.*  The only visible part of Agent Nickles uniform was a border patrol baseball cap.  Since Mr. De la Cruz-Tapia stared straight ahead, it is plausible he did not see the cap.  The district court found it unlikely that Mr. De la Cruz-Tapia had seen the car from two lanes away on the interstate.

   The district court also noted that Agent Nickles undermined his grounds for suspicion when he testified that he believed both eye contact and lack of eye contact constituted suspicious behavior.  On cross-examination, Agent Nickles

testified, "I thought it was suspicious the way he stared straight ahead." *Id.* at 51.

The cross-examiner then asked, "Had he looked at you, would you have had any concerns?" *Id.* at 52. To which Agent Nickles replied, "Possibly, depending on how he looked at me."[1] *Id.*

Under these circumstances, the inference of non-recognition and the credibility of Agent Nickles could be interpreted in favor of Mr. De la Cruz-Tapia without offending common sense. As such, the district court's choice of interpretation is not clearly erroneous.

*(3) Abrupt Exit*

The government's argument of evasive behavior based on Mr. De la Cruz-Tapia's abrupt exit from the interstate turns again on Mr. De la Cruz-Tapia's recognition of Agent Nickles as a member of the border patrol. As discussed above, we do not reverse the district court's finding to the contrary. In addition, the district court concluded that Mr. De la Cruz-Tapia's driving implicated ordinary rather than evasive behavior since the evidence showed Exit 79 is an abrupt exit. Agent Nickles, in surveillance of the Chevrolet, missed the exit himself and had to make a u-turn. The court discounted Agent Nickles testimony

---

[1]The Ninth Circuit has rejected allowing eye contact and avoidance of eye contact to qualify as suspicious behavior because it "put[s] the officers in the classic 'heads I win, tails you lose position.'" *United States v. Garcia-Camacho*, 53 F.3d 244, 247 (9th Cir. 1995) (citations omitted).

that he saw no brake lights when Mr. De la Cruz-Tapia exited because given Agent Nickles' position along side the Chevrolet, it was unclear that the brake lights were visible to him. Again, we find the inferences plausible and defer to the district court's findings on Agent Nickles' credibility.

*(4) Gas Station*

The government next argues that Mr. De la Cruz-Tapia's activity at the gas station was suspiciously evasive. However, if he did not know he was being followed by a border patrol agent, the behavior seems innocent. The evidence supports the district court's findings in this regard. The court observed that Mr. De la Cruz-Tapia parked his vehicle in a clearly visible location at the nearest gas station off Exit 79 and did not attempt to flee after Agent Nickles missed Exit 79. In response to Agent Nickles testimony that Mr. De la Cruz-Tapia seemed to be looking around and that he worked under the hood of his car but had no tools, the district court noted that Agent Nickles arrived later and Mr. De la Cruz-Tapia could have been doing a number of things under the hood prior to the agent's arrival. Once again, in reviewing the record, we are not persuaded the district court clearly erred in making the inferences it did from the facts presented.

*(5) Multiple Border Crossings*

Finally, the government argues and Agent Nickles testified that the car crossed the border in an area around Columbus which was a hot spot for illegal

alien and drug traffic, and that multiple border-crossings triggered suspicion. The district court, however, emphasized that the vehicle in question was registered in Columbus and the owner lived there. Citing Agent Nickles' own testimony that many people living in border towns work in the United States and legitimately cross the border daily near their town of residence, the district court found that the multiple crossings were not out of the ordinary.

**B.**
**Reasonableness of the Stop**

We review the reasonableness of Agent Nickles suspicion under a de novo standard of review. In determining reasonable suspicion, the court must consider "the totality of the circumstances – the whole picture," *United States v. Cortez*, 449 U.S. 411, 418 (1981), and in so doing, must accord due deference to a law enforcement officer's ability to recognize suspicious behavior. *Wood*, 106 F.3d at 946.

For example, in *United States v. Barron-Cabrera*, 119 F.3d 1454, 1462 (10th Cir. 1997), the defendant drove a Ryder truck, unaccompanied by another vehicle driving in tow or in tandem, on a road rarely used for household moves. The road was reasonably near the Mexican border, and a known smuggling corridor upon which four vehicles carrying thirty-two aliens had been apprehended that month. *Id.* When the driver saw the Border Patrol vehicle, he became noticeably agitated and then started driving stiffly. *Id.* His speed

dropped to ten miles an hour below the speed limit, and he drove over the center and shoulder lines. *Id.* These factors in the aggregate created a suspicious portrait, particularly given deference to the law enforcement agent's judgment. The driver's noticeable agitation and subsequent stiffness is relevant behavior where the driver recognized he was being followed by a *marked* Border Patrol vehicle.

In the present case, we assess the impact of the factors in the aggregate, under the totality of the circumstances, incorporating the underlying factual findings of the district court. Agent Nickles saw a large, old vehicle, the kind a drug or illegal alien smuggler might use, driving in an area known for drug and alien smuggling. It was morning, a usual time for traffic. The vehicle was not heavily loaded, had no passengers, and did not swerve on the road. Agent Nickles drove an unmarked jeep which the driver did not recognize as a border patrol vehicle. The driver did not make eye contact as he drove by Agent Nickles. As Agent Nickles drove along side the car, the driver took Exit 79 off the interstate. Exit 79 was so sharp, Agent Nickles missed it. The driver parked in the front of the nearest gas station off the exit, and remained there while Agent Nickles circled around to catch up with the driver. While Agent Nickles observed from afar, the driver looked around, looked in the hood and trunk, and re-entered the highway going in the same direction. The car was legally registered to someone

in the border town of Columbus, and the car had legally crossed the border at Colombus three times in three days.

We conclude in reviewing the aggregate facts, based on the extensive findings of the district court, that "the mantra 'totality of the circumstances' cannot metamorphose these facts into reasonable suspicion." *Wood*, 106 F.3d at 948. The district court determined, and we decline to redraw the inference, that Mr. De la Cruz-Tapia did not know Agent Nickles was a border patrol agent. Accordingly, the three factors that support the agent's conclusion that Mr. De la Cruz-Tapia was evading him, the lack of eye contact, the abrupt exit, and the gas station activity, become "'so innocent or susceptible to varying interpretations as to be innocuous.'" *Id.* at 946 (quoting *Lee*, 73 F.3d at 1039). Under the totality of the circumstances, we hold the remaining factors in the aggregate do not amount to a reasonable suspicion to stop Mr. De la Cruz-Tapia.

We AFFIRM the order of the district court granting the motion to suppress the evidence.