**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 27 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MIGUEL DIAZ-BORJAS,

Defendant - Appellant.

No. 98-2249
(D. Ct. No. CR-98-101-HB)
(D. N. Mex.)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **TACHA**, and **BALDOCK**, Circuit Judges.

Defendant-Appellant Miguel Diaz Borjas entered a conditional guilty plea
to one count of possession with intent to distribute more than 50 kilograms of
marijuana. Pursuant to the plea agreement, defendant reserved his right to appeal
the district court's denial of his motion to suppress evidence. Defendant now
appeals the district court's denial of his motion to suppress, arguing that the
search of his vehicle was unconstitutional because authorities had no reasonable

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

suspicion or probable cause to stop his vehicle and he did not voluntarily consent to the search. Our jurisdiction arises under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We affirm defendant's conviction.

**I.**

On January 23, 1998, United States Border Patrol Agent Gilbert Garza was working the primary inspection lane at a fixed border patrol checkpoint on I-10 several miles west of Las Cruces, New Mexico. Interstate 10, running along the southern border of Mew Mexico to El Paso, Texas, is a known corridor for drug trafficking. At about 7:30 a.m., an individual passing through the checkpoint reported to Agent Garza that he had seen a car turn around prior to the checkpoint. The informant described the vehicle as a small, grey sports car with a black bra and Texas license plates, occupied and driven by a single male. Based on this information, Agent Garza, accompanied by Border Patrol Agent Ken Dalton, a seven-year veteran, set forth to locate the described vehicle.

Approximately ten minutes later, Agents Garza and Dalton spotted a vehicle driving east on I-10 (away from the checkpoint) matching the informant's description. The car was a grey Geo Storm with Texas license plates, equipped with a black bra. A single male occupant drove the car. The agents pulled up beside the car and observed the driver. The driver exhibited signs of nervousness, tightly gripping the steering wheel and refusing to even glance at the marked

patrol cruiser. Defendant continued to avoid eye contact with the agents even after Agent Dalton repeatedly waved to defendant to get his attention. The agents pulled over the vehicle. The stop occurred approximately twenty-five miles from the Mexican border.

After stopping the car, Agent Garza remained in the patrol cruiser to conduct a vehicle records check. Agent Dalton approached defendant and asked if he was a citizen and from where he was traveling. Defendant responded that he was a United States citizen traveling from Deming, New Mexico. Because Deming is west of the I-10 checkpoint and defendant was spotted traveling east, Agent Dalton knew that defendant's answer was inconsistent with the information that the car had turned around before the checkpoint. Agent Dalton asked defendant to step to the rear of the vehicle to avoid traffic. At that time, Agent Garza, who had learned from the vehicle check that the car had not been reported stolen, approached defendant and Agent Dalton. Agent Garza identified himself and asked defendant why he had turned around prior to the checkpoint. Defendant stated that he had received a phone call from his brother in Juarez informing him that his sister was ill and that he needed to return immediately to Juarez.

Agents Dalton and Garza requested defendant to wait in his car while they conferred. Defendant consented. After discussing their observations, including

defendant's inconsistent stories regarding his point of origin, Agents Dalton and Garza requested permission to conduct a search of the vehicle with a drug-detecting canine. Agent Garza approached the defendant alone and requested his permission to "run a dog around [his] vehicle to inspect it." Motion to Suppress Hr'g Tr. at 13. Defendant consented.

The drug-detecting canine and its handler arrived approximately fifteen minutes later. The dog alerted to the rear bumper of the vehicle. Thereafter, the agents took the car to a border patrol station for a thorough search. Authorities ultimately recovered 122 pounds of marijuana hidden in the car's rear bumper and dashboard.

On February 18, 1998, authorities charged defendant in a one-count indictment with possession with intent to distribute more than 50 kilograms of marijuana in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(c). On April 2, 1998, defendant filed a motion to suppress the drugs seized and statements he made as a result of the border patrol stop. On May 11, 1998, the district court denied the motion following an evidentiary hearing. The next day defendant entered a conditional guilty plea to the indictment, reserving his right to appeal the district court's denial of his motion to suppress. The district court entered judgment against the defendant and sentenced him to twenty-seven months imprisonment followed by a three-year period of supervised release.

**II.**

Mr. Diaz Borjas argues that the district court erred in denying his motion to suppress because the search of his vehicle violated the Fourth Amendment. Specifically, defendant contends: (1) Agents Dalton and Garza did not have reasonable suspicion or probable cause to stop his vehicle, and (2) he did not voluntarily consent to the canine search of his vehicle. In reviewing the denial of a motion to suppress, "we accept the district court's factual findings unless clearly erroneous and view the evidence in the light most favorable to the prevailing party." United States v. De La Cruz-Tapia, 162 F.3d 1275, 1277 (10th Cir. 1998). We review de novo the ultimate determination of whether a search or seizure is reasonable under the Fourth Amendment. See id.

**A.**

Our law is well established regarding when roving border patrol agents may stop a vehicle without running afoul of the Fourth Amendment. "Border patrol agents 'on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion,' that those vehicles' occupants may be involved in criminal activity." United States v. Cantu, 87 F.3d 1118, 1121 (10th Cir. 1996) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975)). The Supreme Court has identified eight non-exclusive factors border patrol agents

- 5 -

may consider when deciding whether to stop a vehicle:

> (1) characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the agent's previous experience with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) characteristics of the vehicle; and (8) the appearance that the vehicle is heavily loaded.

United States v. Lopez-Martinez, 25 F.3d 1481, 1483-84 (10th Cir. 1994); see also Brignoni-Ponce, 422 U.S. at 884-85. However, determining whether a roving border patrol has reasonable suspicion to stop a vehicle does not depend on any one factor, nor must agents identify a minimum number of factors to establish reasonable suspicion. See Lopez-Martinez, 25 F.3d at 1484. Rather, we must consider the totality of the circumstances. See, e.g., id.

"In examining the totality of the circumstances, '[c]ommon sense and ordinary experience are to be employed and deference is to be accorded to a law enforcement officer's ability to distinguish between innocent and suspicious actions.'" De La Cruz-Tapia, 162 F.3d at 1277 (quoting United States v. Wood, 106 F.3d 942, 946 (10th Cir. 1997)). Furthermore, reasonable suspicion may be based on "'a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation.'" Lopez-Martinez, 25 F.3d at 1484 (quoting Terry v. Ohio, 392 U.S. 1, 22-23 (1968)). An agent cannot, however, predicate a vehicle stop solely upon a "hunch." See De La Cruz-Tapia,

162 F.3d at 1277.  "While the necessary level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence, the Fourth Amendment requires some minimal level of objective justification."  Cantu, 87 F.3d at 1121 (internal quotation marks and citations omitted).

The undisputed facts show that Agents Dalton and Garza had reasonable suspicion to stop Mr. Diaz Borjas.  Before stopping defendant, the agents had learned that a car matching the defendant's vehicle had been seen turning around prior to the fixed border patrol checkpoint.  Had the border patrol agents themselves witnessed defendant's car turn around to evade the checkpoint, this would constitute one factor to support a finding of reasonable suspicion.  See, e.g., United States v. Merryman, 630 F.2d 780, 783 (10th Cir. 1980).  Indeed, Agent Dalton testified at the evidentiary hearing that, in his experience, approximately ninety percent of vehicles that turn around to avoid the checkpoint do so because the vehicle's occupants are involved in illegal activity.

Defendant argues, however, that the fact that he turned his car around to avoid the checkpoint cannot support a finding of reasonable suspicion in this case because a third party witnessed the act and reported it to border patrol officials.[1]

_____

[1] To the extent plaintiff argues that the informant's tip cannot support a finding of reasonable suspicion because the evidence does not establish precisely how far away defendant was from the checkpoint when he turned around, we conclude that this argument has no merit here.  The informant reported defendant's turn-around to Agent Garza shortly after he witnessed it, and Agents Dalton and Garza encountered the car

An informant's tip may justify a roving border patrol stop "if under the totality of the circumstances the tip furnishes both sufficient indicia of reliability and sufficient information to provide reasonable suspicion that criminal conduct is, has, or is about to occur." United States v. Leos-Quijada, 107 F.3d 786, 792 (10th Cir. 1997). In making this determination, we consider: (1) the informant's credibility or veracity; (2) the basis of the informant's knowledge; and (3) whether authorities are able to independently corroborate the reliability of the tip. See id.

When passing through the checkpoint, the informant in this case reported to border patrol agents that he had seen defendant's car turn around on I-10 apparently to avoid the checkpoint. The informant had no reason to lie, and he provided sufficient detail to Agent Garza to indicate that he was, in fact, telling the truth. Second, the informant's knowledge was based on his personal observations. It is difficult to imagine a much more reliable source of knowledge. Finally, Agents Dalton and Garza adequately corroborated the informant's account. Within minutes after receiving the tip, Agents Dalton and Garza spotted a vehicle matching the informant's description driven by one male occupant on I-

approximately ten minutes after receiving the tip. Even traveling at great speed, we find that in order for the agents to have reached defendant's vehicle that quickly, Mr. Diaz Borjas must have turned around in sufficient proximity to the checkpoint to warrant a reasonable inference that he was doing so to evade the border patrol agents there.

- 8 -

10 away from the checkpoint. See United States v. Villalobos, 161 F.3d 285, 290-91 (5th Cir. 1998) (finding sufficient corroboration when officers found car matching informant's description traveling along roads known for smuggling and the car had entered the U.S. from Mexico); Leos-Quijada, 107 F.3d at 793 (finding sufficient corroboration when officer encountered vehicle matching known informant's description, with the same number of occupants as the informant had observed, traveling in the same direction and rate of speed as the informant reported); United States v. Lopez-Gonzalez, 916 F.2d 1011, 1014 (5th Cir. 1990) (finding corroboration when two vehicles matching the informant's description passed a border patrol agent at the same location and time frame predicted in the tip). Consequently, we find that Agents Dalton and Garza were entitled to rely upon the observations reported to them by the informant and that those observations may be used to support a finding of reasonable suspicion here. Cf. Leos-Quijada, 107 F.3d at 793 (finding informant's tip reliable when it was from a reliable source, based on personal observation, and officers independently corroborated the tip).

In addition, other evidence bolsters a finding of reasonable suspicion in this case. When Agents Dalton and Garza pulled along side defendant's car, he failed to make eye contact with them. While failure to make eye contact may be insufficient itself to warrant a finding of reasonable suspicion, see, e.g., De La

Cruz-Tapia, 162 F.3d 1275, 1277 n.1 (10th Cir. 1998) (noting that Ninth Circuit has "rejected allowing eye contact and avoidance of eye contact to qualify as suspicious behavior"), here, the failure to acknowledge the presence of the marked patrol cruiser was suspicious given that Agent Dalton repeatedly waved his hand at defendant to get his attention, see United States v. Aldaco, 168 F.3d 148, 152 (5th Cir. 1999) (noting that avoidance of eye contact may or may not be entitled to weight, but that it is an appropriate factor to consider in observing a defendant's overall behavior); cf. United States v. Barbee, 968 F.2d 1026, 1028-29 (10th Cir. 1992) (stating that a border patrol agent's belief that vehicle occupants are "slouching down" to avoid detection may create reasonable suspicion).  The agents also observed defendant tightly grip the steering wheel as they followed him.  See United States v. Benitez, 899 F.2d 995, 998 (10th Cir. 1990) (upholding district court's reasonable suspicion determination based, in part, on driver's "white knuckles" grip on steering wheel).  Furthermore, the defendant was stopped approximately twenty-five miles from the Mexican border.  See Lopez-Martinez, 25 F.3d at 1485 (concluding that stop by border patrol agents within 60 miles of Mexican border weighed in favor of a finding of reasonable suspicion); 8 C.F.R. § 287.1(a)(2) (defining "reasonable distance" for immigration officials to conduct warrantless stops pursuant to 8 U.S.C. § 1357(a)(3) as "within 100 air miles from any external boundary of the United

States"). We find that these facts, combined with the information Agents Dalton and Garza received regarding defendant's attempt to avoid the border patrol checkpoint, support a finding of reasonable suspicion that justified stopping defendant's vehicle. Therefore, the initial stop of Mr. Diaz Borjas did not offend his Fourth Amendment rights.[2]

**B.**

Mr. Diaz Borjas also argues that even if he was not unlawfully detained, the search of his car violated his Fourth Amendment rights because his consent to the search was involuntary. However, whether defendant gave voluntary consent to conduct the dog sniff on his vehicle is irrelevant because "consent is not required for a dog sniff of a lawfully detained vehicle." United States v. Chavira, 9 F.3d 888, 890 n.1 (10th Cir. 1993); see also United States v. Massie, 65 F.3d 843, 849 (10th Cir. 1995). Once the dog alerted to the rear bumper of defendant's car, the border patrol agents had probable cause to conduct a full search of the vehicle. See Massie, 65 F.3d at 849. Therefore, we hold that the search of defendant's vehicle did not constitute a Fourth Amendment violation and the

---

[2] While defendant contested the constitutionality of the initial stop, he did not challenge the legality of his subsequent detention in his opening brief. Thus, defendant has waived the issue of whether his detention until and during the dog sniff inspection violated his Fourth Amendment rights. See, e.g., State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (asserting that failure to raise an issue in the opening brief waives the issue).

district court properly denied Mr. Diaz Borjas' motion to suppress. **AFFIRMED**.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge