**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 14 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOHN D. ROBINSON,

    Defendant-Appellant.

No. 00-3393
(D. Kan.)
(D.Ct. No. 00-CR-40023-SAC)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **KELLY**, Circuit Judge, **BRORBY**, Senior Circuit Judge**,** and **BRISCOE**, Circuit Judge.

_____

    Defendant John D. Robinson entered a conditional guilty plea to possession of over one hundred kilograms of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2.  Mr. Robinson's conditional plea reserved the right to appeal the district court's denial of his motion to suppress.  The district court sentenced Mr. Robinson to sixty months

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

imprisonment, four years of supervised release, and a $100 assessment. On appeal, Mr. Robinson challenges the district court's denial of his motion to suppress. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.


BACKGROUND

On March 9, 2000, Mr. Robinson drove his pickup truck, which had a locked cover over the truck bed, eastbound on Interstate 70. Kansas Highway Patrol Trooper Michael R. Weigel stopped Mr. Robinson for speeding. Trooper Weigel's patrol car was equipped with a video camera. He also wore a microphone that recorded the audio. The audio-video equipment recorded the stop and subsequent encounter between Trooper Weigel and Mr. Robinson. The videotape admitted into evidence begins at 11:05 a.m. when Trooper Weigel's patrol car pulled behind Mr. Robinson's pickup truck on the side of Interstate 70.

Trooper Weigel approached Mr. Robinson in his truck and asked for Mr. Robinson's driver's license and registration. Trooper Weigel explained to Mr. Robinson he would issue a warning for the speeding violation, and asked Mr. Robinson where he was coming from. Mr. Robinson responded he was coming from a ski trip in Colorado. After engaging in a brief dialogue, Trooper Weigel told Mr. Robinson he intended to run Mr. Robinson's driver's license check

through police dispatch.

Trooper Weigel returned to his patrol car, and waited for the results of the driver's license check. At approximately 11:12 a.m., Trooper Weigel informed Mr. Robinson the driver's license check would take a few more minutes because the dispatcher's computer system was not operating correctly, and asked Mr. Robinson for proof of insurance. After examining Mr. Robinson's proof of insurance, Trooper Weigel returned to his patrol car.

During the traffic stop, Trooper Weigel noticed Mr. Robinson made very little eye contact, his hands were visibly shaking, he was "real fidgety," and he consistently wiped his palms on his pant legs. Trooper Weigel also observed litter from fast food wrappers and a box of "Stay Awake" pills on the passenger seat. Trooper Weigel's suspicions were raised because, in his experience, he knew drug traffickers use caffeine pills or other substances to stay awake, in order to arrive at their destination more quickly. In addition, Mr. Robinson had no visible skiing paraphernalia or clothing that would normally be expected of a traveler returning from a ski vacation. Finally, Trooper Weigel testified the back of Mr. Robinson's pickup truck was "squatting low," suggesting it contained a "heavy load."

At approximately 11:17 a.m., Trooper Weigel handed Mr. Robinson back his driver's license and documents, and issued him a warning ticket. Trooper Weigel told Mr. Robinson, "That's all I got," and then immediately inquired, "You don't mind if I ask you a couple of questions do you?" Trooper Weigel testified Mr. Robinson answered, "Yes." Trooper Weigel then asked, "You don't have anything illegal in the back of the truck, can I take a look in the back?" Mr. Robinson replied he had lost the key that unlocked the cover of his truck bed. However, he assured Trooper Weigel the truck bed was "pretty much empty."

Trooper Weigel then inquired, "You don't mind if I get a dog up here and sniff around a little?" Mr. Robinson responded, "Sure." As Trooper Weigel walked back to his patrol car, he told Mr. Robinson to "hold tight." Trooper Weigel returned to his car and radioed for the canine unit. A second trooper, Trooper Irock, arrived shortly thereafter and sat in Trooper Weigel's patrol car.

At approximately 11:23 a.m., Trooper Weigel told Mr. Robinson, who remained seated in his pickup truck, the canine unit would arrive in a few minutes. Trooper Weigel testified Mr. Robinson responded the additional delay for the canine unit was "'Okay,' or words to that effect." At 11:27 a.m., Trooper Patrick arrived with his drug sniffing dog. Troopers Weigel and Patrick went up

to Mr. Robinson's pickup and asked Mr. Robinson whether there was anything illegal in the back of the truck; Mr. Robinson denied the presence of anything illegal. The drug sniffing dog then walked around the back of the truck and alerted to the presence of controlled substances at the tailgate of Mr. Robinson's pickup truck. After the dog alerted, the troopers searched the cab of the pickup for the missing key to the truck bed cover, but they were unable to find it. Ultimately the troopers used a crowbar to pry the cover off. The troopers observed a large steel box running the length and width of the truck bed, and then placed Mr. Robinson under arrest. The steel box inside Mr. Robinson's pickup truck contained approximately 385 pounds of marijuana.

Mr. Robinson was charged in a one count grand jury indictment with violations of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2. Mr. Robinson entered a conditional guilty plea and filed a motion to suppress the evidence. The district court denied the motion, holding the traffic stop evolved into a consensual encounter between Mr. Robinson and Trooper Weigel, and the troopers' search of the pickup truck did not violate the Fourth Amendment. Specifically, the district court reasoned the detention ended when Trooper Weigel returned Mr. Robinson's license and documents and told Mr. Robinson that was all Trooper Weigel had for him; thereafter, Mr. Robinson's and Trooper Weigel's

encounter during the additional questioning was consensual. The district court also concluded Mr. Robinson "consented to extend the length of [the] stop for a canine to arrive and walk around the exterior of his pickup truck." According to the district court, once the dog alerted to the presence of controlled substances, the troopers had probable cause to search the pickup truck.

On appeal of a motion to suppress, we view the evidence in the light most favorable to the prevailing party, in this instance the government. *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999). "We review the district court's findings of historical fact for clear error and give due weight to inferences which the district court draws from those findings." *Id.*

> A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.... Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."

*United States v. De la Cruz-Tapia*, 162 F.3d 1275, 1277 (10th Cir. 1998) (quotation marks, alteration, and citation omitted). "The credibility of witnesses and the weight to be given the evidence is the province of the district court." *Patten*, 183 F.3d at 1193. The district court's ultimate determination of reasonableness under the Fourth Amendment is a question of law we review de novo. *De la Cruz-Tapia*, 162 F.3d at 1277.

DISCUSSION

Mr. Robinson does not challenge the basis or validity of the traffic stop. He claims Trooper Weigel detained him without his consent by (1) continuing to question him after returning his driver's license and other documents, and (2) requiring him to wait for the canine unit to arrive to "search" his truck.[1]

It is beyond dispute that during a routine traffic stop a law enforcement officer "may request a driver's license and vehicle registration, run a computer check, and issue a citation." *United States v. McRae*, 81 F.3d 1528, 1534 (10th Cir. 1996) (quotation marks and citation omitted). Generally, once the driver produces a valid license and registration, "he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning." *Id.* (quotation marks and citation omitted). An officer may, however, further question the driver "if (1) during the course of the traffic stop the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity; or (2) the driver voluntarily consents to the officer's additional questioning." *United States v. Elliott*, 107 F.3d 810, 813 (10th Cir. 1997)

---

[1] Mr. Robinson also alleges Trooper Weigel lacked reasonable and articulable suspicion that Mr. Robinson was engaged in criminal activity. We need not address whether Trooper Weigel possessed reasonable and articulable suspicion because we hold Trooper Weigel's and Mr. Robinson's encounter was consensual.

(quotation marks and citation omitted). The driver's consent means the encounter ceases to be seizure or detention, "and hence the Fourth Amendment's strictures are not implicated." *Id.*

In determining whether a consensual encounter or unlawful detention transpired, we consider the totality of the circumstances. *Id.* at 814. "A traffic stop may become a consensual encounter if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority." *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996). "A consensual encounter is the *voluntary cooperation* of a private citizen in response to *non-coercive questioning* by a law enforcement officer." *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000) (emphasis added and quotation marks and citation omitted). Whether an encounter is consensual "depends on whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter." *Id.* (quotation marks and citation omitted). Although not an exhaustive list, certain factors indicating a "coercive show of authority" may suggest an encounter is not consensual: "the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be

compelled." *United States v. Turner*, 928 F.2d 956, 959 (10th Cir.), *cert. denied*, 502 U.S. 881 (1991); *see United States v. Sandoval*, 29 F.3d 537, 540-41 (10th Cir. 1994).

*1. Consent to Officer's Additional Questioning*

Mr. Robinson acknowledges Trooper Weigel issued the warning and returned Mr. Robinson's documents before asking further questions. Mr. Robinson claims a reasonable person would not have felt free to leave after Trooper Weigel said "That's all I've got," because Trooper Weigel (1) did not step away from Mr. Robinson's truck; (2) failed to inform Mr. Robinson he was free to leave; (3) testified he did not know whether he would have allowed Mr. Robinson to terminate the encounter and drive away if Mr. Robinson had tried; and (4) immediately asked Mr. Robinson a series of follow-up questions without waiting for Mr. Robinson's response. According to Mr. Robinson, he did not consent to Trooper Weigel's inquiry whether he would mind if Trooper Weigel asked him a few questions; instead, he responded to Trooper Weigel's request to look underneath the truck bed cover.

The district court found Trooper Weigel returned Mr. Robinson's documents, told him that the purpose of the traffic stop was concluded, stepped

away from the driver's window, used a conversational tone of voice, and asked and received permission before making further inquiries. The court also found the encounter occurred during the day on a public highway, Trooper Weigel was the only officer present during the inquiry, and Mr. Robinson could have driven away from the scene, but instead voiced no objections and remained attentive and responsive to Trooper Weigel's questions.

Despite Mr. Robinson's contentions to the contrary, Trooper Weigel was not required to step away from Mr. Robinson's pickup truck or inform Mr. Robinson he was free to leave, in order for their encounter to be deemed consensual. *See West*, 219 F.3d at 1176-77 (recognizing the officer likely stood close to the vehicle to avoid being hit by traffic on the interstate and holding "[a]n officer is not required to inform a suspect ... that he was free to leave"). Nevertheless, after viewing the videotape, we are not "left with the definite and firm conviction" that the district court clearly erred in finding Trooper Weigel did step away from Mr. Robinson's window. *De la Cruz-Tapia*, 162 F.3d at 1277. We also note it is evident from the record that Trooper Weigel did not in any way block the path of Mr. Robinson's vehicle. Trooper Weigel's testimony that he did not know whether or not he would have permitted Mr. Robinson to leave if Mr. Robinson had tried to drive away is immaterial because this statement is merely

an expression of his indefinite, subjective motivations in a hypothetical event. *See United States v. Anderson*, 114 F.3d 1059, 1065 (10th Cir. 1997).

While it is true Trooper Weigel promptly asked follow-up questions after returning Mr. Robinson's documents and telling him "[t]hat's all I got," there is absolutely no evidence in the record suggesting Trooper Weigel's tone of voice when asking these relatively routine questions, or his subsequent conduct, was aggressive or coercive. *See West*, 219 F.3d at 1177. Although Mr. Robinson claims he never permitted Trooper Weigel to make further inquiries, the district court found, based on Trooper Weigel's testimony, that Mr. Robinson agreed to allow additional questioning. *See Patten*, 183 F.3d at 1193 (recognizing witness credibility and the weight accorded to evidence is within the district court's province). In any event, Mr. Robinson implicitly indicated his "voluntary cooperation" with Trooper Weigel's questioning when he responded he lost the key to the truck bed cover. *See West*, 219 F.3d at 1176. Based on the entire record and our standard of review, we simply cannot conclude the district court clearly erred in finding Mr. Robinson consented to additional questioning.

Accordingly, we hold Trooper Weigel asked Mr. Robinson additional questions during a consensual encounter. In short, Mr. Robinson chose to listen

to and answer Trooper Weigel's questions without any objective reason to believe he was not free to leave.

*2. Consent to Extended Encounter to Wait for Canine Unit*

Mr. Robinson claims that because Trooper Weigel did not lawfully detain him after returning his documents, his continued detention "to wait for the canine unit to arrive to search his truck and the consequent search by the dog constitute an unreasonable search and seizure." Stated differently, Mr. Robinson maintains that he did not consent to await the arrival of the canine unit or the "subsequent dog sniff search."

Both parties apparently accept Mr. Robinson's characterization that the use of the drug sniffing dog constituted a search of his pickup, and rely on consent to search case law exclusively. However, this court has recognized a dog sniff of a lawfully detained vehicle is not a search. *United States v. Morales-Zamora*, 914 F.2d 200, 203 (10th Cir. 1990). Similarly, random dog sniffing of vehicles without prior lawful detention or reasonable suspicion is not a search. *United States v. Ludwig*, 10 F.3d 1523, 1527 (10th Cir. 1993). From the reasoning of this case law, it is a logical extension that a canine sniff of a vehicle whose driver has consented to an extended encounter is not a search. *See id.* Accordingly, the

-12-

drug sniffing dog that walked around the exterior of Mr. Robinson's pickup truck did not "search" the truck, and an evaluation under our consent to search case law is inappropriate. This does not end our analysis, however, for we still must determine whether the district court clearly erred in finding Mr. Robinson consented to continue his encounter to await the arrival of the canine unit after Trooper Weigel completed his additional questioning. *See United States v. Chavira*, 9 F.3d 888, 890 n.1 (10th Cir. 1993) ("Although consent is not required for a dog sniff of a lawfully detained vehicle ... it is required for continued detention beyond the lawful period.").

The district court determined Mr. Robinson "consented to extend the length of this stop for a canine to arrive and walk around the exterior of his pickup truck." The district court found Trooper Weigel asked Mr. Robinson whether he minded waiting for a dog to arrive and sniff around Mr. Robinson's truck. According to the district court, Mr. Robinson's manner and intonation when he responded "sure" conveyed his consent to Trooper Weigel's request, and not his objection. Trooper Weigel then told Mr. Robinson "O.K., hold tight," which the district court found was merely a request to be patient while Trooper Weigel made arrangements for the canine unit. Before the canine unit arrived, Trooper Weigel returned to the pickup truck and informed Mr. Robinson the delay would last a couple more minutes. The district court noted Trooper Weigel's testimony that

-13-

Mr. Robinson indicated the additional delay was okay, and found Mr. Robinson did not object to the delay. Because the district court concluded Mr. Robinson plainly consented to wait for the drug sniffing dog to arrive and walk around his truck, the court held "[t]his is not a situation where the defendant must give any additional voluntary consent to *search*, for consent is not required for a dog sniff of a lawfully detained vehicle." (Emphasis added and quotation marks and citation omitted.) Finally, the district court held the troopers had probable cause to search the pickup truck once the dog alerted to the presence of controlled substances, and did not need Mr. Robinson's consent to search.

On appeal, Mr. Robinson contends the district court clearly erred in finding he consented to Trooper Weigel's question whether he minded if Trooper Weigel called a canine unit. Mr. Robinson claims his response can be construed as either consent ("sure a dog could sniff around") or objection ("sure he minded if a dog sniffed around") to the prolonged encounter and dog sniff. Mr. Robinson's argument is not persuasive.

From the record before us, the district court did not clearly err in finding Mr. Robinson's demeanor and tone indicated his consent to wait. In addition, Mr. Robinson does not challenge the district court's finding that he did not object

when he learned Trooper Weigel had in fact called a canine unit and the dog would arrive in a couple of minutes. Trooper Weigel testified that when he informed Mr. Robinson of the delay in the canine unit's arrival, Mr. Robinson indicated his willingness to wait a couple more minutes for the canine sniff by saying "'Okay,' or words to that effect." In short, Mr. Robinson's initial response and subsequent conduct indicate he consented to the extended encounter. *See De la Cruz-Tapia*, 162 F.3d at 1277 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

To the extent Mr. Robinson alleges his consent to the extended encounter was involuntary or a product of police coercion, we disagree. *See Sandoval*, 29 F.3d at 541 (recognizing lack of "coercive show of authority" may indicate, but does not compel the conclusion, that driver consented voluntarily to a police-citizen encounter). In denying Mr. Robinson's motion to suppress, the district court implicitly found Mr. Robinson's consent to the extended encounter was voluntary and not coerced. This finding should be accepted by this court absent clear error. *See Patten*, 183 F.3d at 1193; *see also United States v. Toro-Pelaez*, 107 F.3d 819, 824-25 (10th Cir.), *cert. denied*, 522 U.S. 845 (1997). Mr. Robinson reiterates his argument that Trooper Weigel did not tell him he is free to leave; however, Trooper Weigel was not required to inform Mr. Robinson in order

for the prolonged encounter to be deemed consensual. *See West*, 219 F.3d at 1176-77. Although Mr. Robinson asserts Trooper Weigel did not inform him he had the right to refuse consent, Mr. Robinson fails to provide reasoned argument or legal authority to support a claim that such information must be conveyed for an extended encounter to be deemed consensual. Mr. Robinson also suggests the presence of the second trooper created an intimidating environment. It is uncontroverted Trooper Weigel was the only officer present when Mr. Robinson initially consented to wait, and when the second officer did arrive he remained in Trooper Weigel's car until after the canine unit alerted to the presence of controlled substances. Finally, Mr. Robinson maintains his consent was involuntary and coerced because Trooper Weigel was determined to find out what was under the truck bed cover by "announcing his intent" to call the canine unit. We note Trooper Weigel first asked Mr. Robinson whether he could bring in the canine unit, and only after receiving Mr. Robinson's consent did Trooper Weigel call for the drug sniffing dog. In other words, Trooper Weigel announced his intent after receiving Mr. Robinson's consent. Accordingly, there is no evidence in the record before us from which we could conclude the district court clearly erred in finding Mr. Robinson's consent to the prolonged encounter was voluntary and not coerced.

Once the canine alerted to the presence of drugs, the troopers had probable cause to search the pickup truck, and did not need Mr. Robinson's consent. Mr. Robinson briefly asserts, in a conclusory fashion, that the troopers unlawfully searched the cab of his pickup truck. We note, however, the troopers searched the cab of the pickup after the dog alerted to the presence of illegal substances, and the troopers found no evidence in the cab. Furthermore, once the dog alerted, there was probable cause to conduct a warrantless search of the entire pickup truck and its contents where contraband may be hidden. *See United States v. Klinginsmith,* 25 F.3d 1507, 1510 (10th Cir.), *cert. denied*, 513 U.S. 1059 (1994); *see also United States v. Barbee*, 968 F.2d 1026, 1030 (10th Cir. 1992) (quoting *United States v. Ross,* 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.")). Mr. Robinson's argument necessarily fails.

We affirm the district court's denial of Mr. Robinson's motion to suppress the evidence.

**Entered by the Court:**

**WADE BRORBY**
United States Senior Circuit Judge

-17-