**F I L E D**
**August 31, 2005**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 04-2115 |
| v. | (D.C. No. 04-CR-228 WJ) |
| | (D. N.M.) |
| EDWARD ALBERT APODACA, | |
| Defendant - Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **LUCERO**, **and O'BRIEN**, Circuit Judges.

Prisoner Edward Albert Apodaca appeals his sentence for Bank Robbery.

He argues first that the court clearly erred in its determination that U.S.S.G.

§ 2B3.1(b)(2)(F) applied to his conduct, and second that under <u>Blakely v.</u>

<u>Washington</u>, 124 S. Ct. 2531 (2004), the application of § 2B3.1(b)(2)(F) violated

---

[*]    The case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

his Sixth Amendment right to trial by jury.[2]  Because we discern neither that the trial court clearly erred in its determination nor that it committed plain error under Booker, we **AFFIRM**.

Apodaca pled guilty to a one-count indictment charging bank robbery in violation of 18 U.S.C. § 2113(a), which prohibits taking "by force and violence, or by intimidation . . . from the person or presence of another . . . money . . . belonging to . . . any bank."  A presentence report ("PSR") was prepared, which computed Apodaca's base offense level as 20.  It recommended a two-level increase for taking from a financial institution and a three-level reduction for acceptance of responsibility.  Apodaca does not appeal these adjustments.  The PSR also recommended, and the district court applied, a two-level increase, under § 2B3.1(b)(2)(F), for making a "threat of death" during the robbery of a financial institution, leading to an offense level of 21.  At sentencing, Apodaca's counsel objected vigorously to the application of the death-threat enhancement, but he did not specifically raise any Sixth Amendment basis for the objection.  With a criminal history category of IV, Apodaca's sentencing range was 57-71 months.

---

[2] When Apodaca raised Blakely before this court, the Supreme Court had not yet issued United States v. Booker, 125 S. Ct. 738 (2005).  However, raising a Sixth Amendment Blakely argument is sufficient to invoke the Sixth Amendment holding in Booker as well.  See United States v. Clifton, 406 F.3d 1173, 1175 n.1 (10th Cir. 2005) (applying Blakely's Sixth Amendment analysis to the federal Guidelines).  Accordingly, we apply the Sixth Amendment analysis of both Booker and Blakely to this case.

The Government recommended the lowest possible Guideline sentence, and the trial court followed that recommendation, sentencing Apodaca to 57 months.

According to the PSR, Apodaca approached the victim bank teller at her work station and handed her a small piece of paper that read, "Be calm and no one gets hurt!! Give me 10's and 20's Fast!!!" At that time, the teller immediately started removing the money from her cash drawer. The victim teller indicated that while she was taking out the money, the defendant stated, "don't do it or you're going to get hurt and bloody." She handed Apodaca the money and he exited the bank.

**I**

On appeal, Apodaca argues first that the district court clearly erred in applying § 2B3.1(b)(2)(F), in supposed conflict with our holding in United States v. Rucker, 178 F.3d 1369, 1371 (10th Cir. 1999). Rucker prohibits as "double counting" a trial court's use of the same conduct to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes. Although only one enhancement was applied to Apodaca for the verbal threat, the Fifth Amendment principle that courts cannot inflict "multiple punishments for the same offense," U.S. v. Halper, 490 U.S. 435, 440 (1989), remains. Thus, a sentencing enhancement punishing an act that necessarily overlaps and is indistinct from the act that constituted the base

offense, and does so for identical purposes, is also prohibited. Such is not the case here.

Apodaca maintains that the written note and the oral "hurt and bloody" threat constitute "one continuous act," and that both together constituted the "force and violence or intimidation," under the bank robbery statute. Thus, he argues, he was punished twice for the same offense, once under 18 U.S.C. § 2113(a), and again under U.S.S.G. § 2B3.1(b)(2)(F).

By enhancing Apodaca's sentence under the death-threat enhancement, the district court implicitly found that Apodaca's oral threat was separate from the force, violence or intimidation supporting the bank-robbery conviction. We review a sentencing court's factual findings for clear error. United States v. Bennett, 329 F.3d 769, 775 (10th Cir. 2003). A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. De la Cruz-Tapia, 162 F.3d 1275, 1277 (10th Cir. 1998). The test for whether the death-threat enhancement applies is "an objective one," namely, what a "reasonable" victim would experience based on the defendant's conduct. United States v. Hogan, 116 F.3d 442, 445 (10th Cir. 1997). Reasonable people fear death when robbers threaten them with pain and bloodletting.

4

In this case, the victim teller was already removing the money from the drawer when Apodaca threatened to "bloody" her. An "intimidation" sufficient to satisfy the bank robbery statute had thus already occurred before the oral threat was uttered. In addition to this temporal distinction, the oral threat is also distinct from the intimidation of the robbery in its purpose: from our review of the record, it appears aimed not to further the robbery by getting the victim teller to remove more money, but instead to prevent her from pressing an alarm button. Based on these facts, we are not left with a definite and firm conviction that the district court erred in construing the verbal threat as a "threat of death" independent from the intimidation used to commit the bank robbery.

**II**

We turn now to Apodaca's Blakely/Booker challenge to his sentence. A district court commits constitutional Booker error when it makes factual findings under a mandatory Guidelines regime and imposes a sentence above the maximum that would have applied had the court not made such findings. United States v. Gonzalez-Huerta, 403 F.3d 727, 731 (10th Cir. 2005) (en banc). The second type of Booker error, non-constitutional Booker error, occurs whenever the district court treats the Guidelines as mandatory rather than advisory in determining the defendant's sentence even though the "calculation based solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a

5

prior conviction" would support such a sentence. United States v. Yazzie, 407 F.3d 1139, 1145 (10th Cir. 2005) (en banc).

Applying Gonzalez-Huerta to the facts of this case, we conclude that constitutional Booker error did not occur. The Guideline range justified solely by the facts to which Apodaca pled, while keeping the acceptance-of-responsibility reduction constant, see United States v. Clark, No. 04-3116, ___ F.3d ___ , 2005 WL 1799806, *4 n.2 (10th Cir. Jul 29, 2005), was 46-57 months. Apodaca received a sentence of 57 months. Because Apodaca's 57-month sentence was one the district court could have imposed without making a § 2B3.1(b)(2)(F) enhancement, no constitutional Booker error was committed in this case. See Yazzie, 2005 U.S. App. LEXIS 9227 at *12. However, because the district court sentenced Apodaca under a mandatory regime, we are presented with non-constitutional Booker error. Gonzalez-Huerta, 403 F.3d at 731-32.

Non-constitutional Booker error was not raised in the district court, and we therefore review the sentencing for plain error. Gonzalez-Huerta, 403 F. 3d at 732. To establish plain error, defendants have the burden of satisfying a four-prong test. They must show that: (1) there was error, (2) it was plain, and (3) it affected their substantial rights. United States v. Cotton, 535 U.S. 625, 631-32 (2002). If properly established, a reviewing court may correct the error if (4) it affects the fairness, integrity, or public reputation of judicial proceedings. Id. at

6

631-32.

That there is error here has already been noted. It is plain because although unknown to the district court at the time, the sentencing decisions it made were contrary to the principles established in Booker and clear at the time of appeal. See United States v. Dazey, 403 F.3d 1147, 1174-75 (10th Cir. 2005) (quoting Johnson v. United States, 520 U.S. 461, 468 (1997)). On the facts of this case, it is a close question whether Apodaca has shown his substantial rights were affected. We need not address this prong because we conclude that Apodaca cannot establish the required fourth prong of plain-error review. Cf. Gonzalez-Huerta, 403 F.3d at 736 ("We need not determine whether [defendant] can satisfy this burden [of showing his substantial rights were affected] because even if he were to meet the third prong, he must also satisfy the fourth prong to obtain relief.").

Where only non-constitutional Booker error is at issue, the fourth prong is especially demanding. We will not notice non-constitutional Booker error unless the defendant establishes the error is "particularly egregious" and that our failure to correct it would result in a "miscarriage of justice." Id. Apodaca "bears the burden of meeting this demanding standard." Id. at 737. In his submissions on appeal, he fails to do so. Apodaca received a sentence that was "within the national norm" for offenders with similar criminal histories and offenses. See id.

7

at 738. Furthermore, "the record is devoid of any mitigating evidence," see id., and the trial judge made no suggestion that he felt constrained by the Guidelines. We therefore cannot conclude that "core notions of justice are offended," id. at 739, such that Apodaca's sentence affects the fairness, integrity, or public reputation of judicial proceedings. Thus, the application of a mandatory sentencing scheme, standing alone, is insufficient to meet the fourth prong of plain error.

### III

For the foregoing reasons, Apodaca's sentence is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge