**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 25 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

No. 02-2225

JESUS GANDARA-SALINAS,

      Defendant-Appellee.

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-01-1652-MV)**

---

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, and Norman Cairns, Assistant United States Attorney, on the brief), Albuquerque, New Mexico, for Plaintiff-Appellant.

H. Craig Skinner of Denver, Colorado (Joseph (Sib) Abraham, Jr., of El Paso, Texas, on the brief), for Defendant-Appellee.

---

Before **SEYMOUR**, **BALDOCK** and **O'BRIEN**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Defendant Jesus Gandara-Salinas was charged with possession of 50 kilograms or more of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a), 841(b)(1(c). The government appeals the district court's suppression of evidence from the immigration stop and search. We reverse and remand for further proceedings.

## I

On the morning of August 30, 2001, United States Border Patrol Agent Collier observed Mr. Gandara driving north on U.S. Highway 54 between Alamogordo, New Mexico and the Mexican border in a pickup truck with Chihuahua, Mexico license plates. Although that stretch of Highway 54 usually has a border control checkpoint, the fixed checkpoint had been torn down earlier in the summer for road construction. The absence of the checkpoint led to an increased use of the highway for smuggling. The agent followed Mr. Gandara for fifteen to twenty minutes, both on the highway and through town, during which time he made several observations that raised his suspicion about possible illegal behavior by Mr. Gandara. Most noteworthy among those observations were that the truck had recently crossed the border, the truck had foreign license plates, the drug checkpoint was temporarily closed resulting in an increase in drug traffic, and the spare tire appeared much larger than the other truck tires and much

-2-

cleaner than the rest of the truck. After following Mr. Gandara through town, Agent Collier stopped the truck. Mr. Gandara consented to a canine inspection. The dog alerted to the gas tank of the truck. Agent Collier found approximately 150 pounds of marijuana in the gas tank and spare tire, which turned out in fact to be much larger than the truck's other tires.

Mr. Gandara moved to suppress this evidence on the ground that Agent Collier did not have the requisite reasonable suspicion to conduct an immigration stop. The district court granted the motion. *United States v. Gandara-Salinas*, 215 F.Supp.2d 1207 (D.N.M. 2002).

## II

The ultimate determination of reasonableness under the Fourth Amendment is a conclusion of law that we review *de novo*. *See United States v. De La Cruz-Tapia*, 162 F.3d 1275, 1277 (10th Cir. 1998). We view the evidence in the light most favorable to the prevailing party, and we accept the district court's findings of fact unless they are clearly erroneous. *See id.* at 1277-78. After reviewing the record, we are persuaded the court misapplied certain legal standards and committed clear error in assessing the testimony of Agent Collier.

The district court correctly recited the applicable legal standards. The Fourth Amendment requires a finding of reasonable suspicion that criminal

activity may be afoot in order to conduct roving border patrol stops. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotations and citations omitted). *See also United States v. Brignoni-Ponce*, 422 U.S. 873 (1975). "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it *falls considerably short of satisfying a preponderance of the evidence standard*." *Arvizu*, 534 U.S. at 274 (quotations and citations omitted) (emphasis added). Border patrol agents may thus stop vehicles "if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" of criminal activity. *United States v. Monsisvais*, 907 F.2d 987, 989-90 (1990) (quoting *Brignoni-Ponce*, 422 U.S. at 884).

The following factors are relevant in determining whether an immigration stop is supported by reasonable suspicion:

> (1) characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) aspects of the vehicle, such as a station wagon with concealed compartments; and (8) the appearance that the vehicle is heavily loaded.

*Monsisvais*, 907 F.2d at 990 (citing *Brignoni-Ponce*, 422 U.S. at 884-85). A law enforcement officer may assess these factors in light of his experience and specialized training, *see Brignoni-Ponce*, 422 U.S. at 885, and a court should

accord deference to an officer's ability to distinguish between innocent and suspicious actions, *see De La Cruz-Tapia*, 162 F.3d at 1277. Guided by these factors, the ultimate assessment of reasonable suspicion depends on the totality of the circumstances. *See id.* In making that determination, a court may not evaluate and reject each factor in isolation. *See Arvizu*, 534 U.S. at 274-75.

In assessing the totality of the circumstances in this case, the district court appears to have engaged in the "sort of divide-and-conquer analysis" the Supreme Court disapproved in *Arvizu*. *See id.* at 274. The court looked at each of Agent Collier's observations and believed each was, by itself, readily susceptible of an innocent explanation. More importantly, the district court failed to accord deference to the agent's ability to "draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that might well elude an untrained person." *Id.* at 273 (quotation and citation omitted). "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Id.* at 277.

The district court dismissed several of the *Brignoni-Ponce* factors – the recent border crossing, the foreign license plates, the temporary closure of the border checkpoint, and the proximity to the border – as not indicative of criminal activity because they could be susceptible of an innocent explanation. *Gandara-Salinas*, 215 F.Supp.2d at 1210-11. Because each of these factors is explicitly

-5-

listed as an appropriate consideration in the *Brignoni-Ponce* analysis, however, the Supreme Court has already determined they *are* considerations appropriate for an agent to weigh. The district court also undervalued the ability of the agent to assess these factors in light of all of his observations and his experience as a border patrol agent.

In addition to these general errors in the district court's approach, we have a definite and firm conviction the court erred in assessing Agent Collier's ability to observe the irregular size of the spare tire on the truck. The court stated:

> The Court finds it highly improbable that Agent Collier could have made a reasonable comparison between Defendant's spare tire and the other four tires, including the tire treads, while traveling at speeds up to 65 miles per hour. . . . Without any evidence to indicate that Agent Collier could, indeed, make a reasonably accurate estimate as to the size and cleanliness of the spare tire while driving on a state highway, the Court does not find such testimony credible.

*Id.* at 1209-10. Our review of the record, however, persuades us there was ample evidence to support the agent's testimony. Agent Collier testified at length as to his view of the tire – why he noticed it, what drew his attention, what indicated the tire was oversized – and as to his extensive experience and knowledge relating to tires in general from the years he worked on trucks as a mechanic. Aplt. App. at 91-96. While the district court couched its finding as a credibility determination, its statement in reference to the evidence presented indicates that this was in reality a factual finding, and one that is not supported by the record.

-6-

For example, the court's reference to the ability of the agent to observe the tire at high speeds is simply incorrect. The agent followed the truck at varying speeds for seven miles, including at slow speeds immediately behind the truck while passing through a town. *Id.* at 91-92.

The size of the tire is of considerable importance in weighing the totality of the circumstances to determine whether Agent Collier had reasonable suspicion of criminal activity. The agent testified that his experience as a border patrol agent included approximately 110-120 narcotics seizures, *id.* at 123, experience had taught him spare tires are commonly used to smuggle narcotics, *id.* at 92-93, the spare tire did not look like it fit properly underneath the vehicle, *id.* at 93, and he closely examined the spare tire as he followed the vehicle, *id.* at 94-95. He also testified that this particular section of highway is a common route for smuggling undocumented immigrants and illegal drugs into the United States, *id.* at 77, he had information the stretch of highway had seen an increase in smuggling while the checkpoint was closed, *id.* at 84-85, he checked the truck's Mexican license plates and learned the vehicle had crossed the border the previous day, *id.* at 89-90, and in his personal experience a high percentage of vehicles found to be carrying narcotics have recently crossed the border, *id.* at 122.

Giving proper consideration to Agent Collier's observations relating to the factors discussed earlier and the evidence regarding the spare tire, we are

convinced the totality of the circumstances supports a finding of reasonable suspicion of criminal activity justifying the stop.  The evidence obtained in the subsequent search of the truck should therefore not have been suppressed.

Accordingly, we **REVERSE** the district court's suppression order and **REMAND** the case for further proceedings.