**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 6 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARIANO VELASCO,

Defendant-Appellant.

No. 02-2189

(D. New Mexico)

(D.C. No. CR-01-1723-BB)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **HENRY**, and **HARTZ**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f). The case therefore is ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

A federal grand jury charged Mariano Velasco with two counts: (1) possession with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2, and (2) conspiracy to possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1); (b)(1)(B), and 846. Mr. Velasco entered a conditional guilty plea, reserving the right to appeal the district court's denial of his suppression motion. The district court sentenced Mr. Velasco to concurrent terms of sixty months' imprisonment, followed by four years' supervised release. Mr. Velasco appeals the district court's denial of his suppression motion. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. FACTUAL BACKGROUND

At 10:50 a.m. on September 24, 2001, Mr. Velasco, accompanied by Hector Rios-Gutierrez, entered the United States Border Patrol checkpoint on Highway 54 south of Alamogordo. The check point is approximately 65 miles from the United States–Mexico border. Mr. Velasco was driving a Ford Excursion.

Mr. Velasco told Border Patrol Agent Domnic Bowcutt that he was a citizen of the United States. Agent Bowcutt inquired as to Mr. Rios's citizenship, and Mr. Rios handed Agent Bowcutt an I-94 permit. Agent Bowcutt then asked

for a passport or border crossing card from Mr. Rios, who explained, in Spanish, that he had been robbed and had lost everything.

Agent Bowcutt reviewed the I-94 permit and believed it to be fraudulent. He then inquired about the travelers' itinerary, and Mr. Rios replied that they were going to visit an ailing aunt in Alamogordo. After Agent Bowcutt asked about Mr. Rios's aunt's address, Mr. Rios responded that he did not know the address, adding that they were meeting her at a gas station. Mr. Velasco explained that he was just giving Mr. Rios a ride to meet his aunt.

Agent Bowcutt was suspicious about the story and requested that the two wait in the "secondary" inspection area while he made some inquiries. Another agent checked the validity of Mr. Rios's I-94 card, and learned that Mr. Rios had actually been issued an I-586 border crossing card, and that Mr. Rios was beyond the 25 miles boundary authorized by that card.

Agent Bowcutt returned the I-94 card to Mr. Rios and asked about the ownership of the vehicle. Mr. Velasco handed him a receipt for the purchase of the car. Agent Bowcutt testified that he noticed Mr. Velasco's hand trembling and explained that he thought it somewhat suspicious to have a receipt rather than an insurance card and registration.

During this time, another agent checked the undercarriage of the car, and he noted that the gas tank appeared to have been altered. Agent Bowcutt asked Mr.

Velasco if the agents could perform a canine inspection, and Mr. Velasco agreed, exiting the vehicle as requested by the agent. The canine sniff resulted in a positive alert to the undercarriage near the gas tank. The agents removed the gas tank and discovered marijuana inside it.

After the grand jury returned the indictment, Mr. Velasco moved to suppress the marijuana discovered by the border patrol agents. The district court concluded that there was ample evidence to support Mr. Velasco's detention and denied his motion to suppress.

## II. DISCUSSION

On appeal, Mr. Velasco argues that the border patrol agents lacked reasonable suspicion to justify referring him to the secondary inspection area and detaining him there. He maintains that Agent Bowcutt's concerns about Mr. Rios's identity and citizenship established only reasonable suspicion of Mr. Rios.

### A. Standard of Review

"In reviewing a denial of a motion to suppress, the trial court's findings of fact must be accepted by this court unless clearly erroneous." *United States v. Preciado*, 966 F.2d 596, 597 (10th Cir. 1992) (internal quotation marks and citation omitted). Further, "we view the evidence in the light most favorable to

the government and [to] the district court's findings." *United States v. Anderson*, 114 F.3d 1059, 1063 (10th Cir. 1997). However, the district court's determinations of reasonable suspicion and probable cause are reviewed de novo on appeal. *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

### B. Analysis

#### 1. Initial Detention

"During a routine fixed-checkpoint stop, border patrol agents may question individuals in the absence of individualized suspicion about their citizenship and immigration status and request documentation." *United States v. Massie*, 65 F.3d 843, 847-48 (10th Cir. 1995). Furthermore, "[a]gents may briefly question individuals concerning such things as vehicle ownership, cargo, destination, and travel plans, as long as such questions are reasonably related to the agent's duty to prevent the unauthorized entry of individuals into this country and to prevent the smuggling of contraband." *Id.* at 848 (citation and quotations omitted). Thus, the first stage of the encounter must remain brief, unintrusive, and must "not exceed the scope of a permissible routine checkpoint stop." *Id.* at 849.

Applying these standards, we conclude that the "brief stop" at the highway roadblock was a "reasonable intrusion into the lives of [Mr. Velasco and Mr. Rios]." *United States v. Galindo-Gonzales*, 142 F.3d 1217, 1221 (10th Cir.

1998); *see also United States v. Morales-Zamora*, 914 F.2d 200, 202-03 (10th Cir. 1990) (citing cases). Agent Bowcutt's initial questioning concerned citizenship, immigrations status, and travel plans. His follow-up question about Mr. Rios's aunt's address was a reasonable attempt to obtain information relevant to these matters.

2. The referral to the secondary inspection area

Mr. Velasco challenges his detention at the secondary inspection area, arguing that Agent Bowcutt's initial questions generated suspicion of only Mr. Rios. As to this issue, the district court determined that, under the totality of the circumstances, the border agent's observation of "suspicious circumstances . . . justified the continued detention of both of the defendants." Aplt's App. at 26.

There is no question that "border patrol agents may question individuals regarding suspicious circumstances, in addition to citizenship matters, when those individuals are stopped at permanent checkpoints." *Preciado*, 966 F.2d at 598. "A suspicious circumstance is not equivalent to the reasonable suspicion standard." *United States v. Rascon-Ortiz*, 994 F.2d 749, 753 n.6 (10th Cir. 1993) (internal quotation marks omitted). Furthermore,

> [t]he presence of a suspicious circumstance allows a border patrol agent to ask a few additional questions concerning the suspicion during the course of a routine customs inspection. Since the additional questions do not add significantly to the length or intrusiveness of the

-6-

detention, the more rigid Fourth Amendment requirements of probable cause or reasonable suspicion are not required.

*Id.*

Border patrol agents are entitled to assess the facts in the light of their experience, and, as a result, we have recognized that they "may perceive meaning in actions that appear innocuous to the untrained observer." *United States v. Cantu*, 87 F.3d 111, 1121 (citing *Brown v. Texas,* 443 U.S. 47, 52 & n. 2 (1979)). Here, the district court properly concluded that Agent Bowcutt may have found Mr. Rios's answers to his questions unsatisfactory, warranting further inquiry regarding Mr. Rios's immigration status.

3. The continued detention and search

Next, Mr. Velasco challenges his continued detention at the secondary inspection area. "Further detention of an individual beyond the scope of a routine checkpoint stop must be based upon reasonable suspicion, consent, or probable cause." *Massie* , 65 F.3d at 848; *see also Preciado* , 966 F.2d at 598 (stating that "even [w]hen the questions asked at the primary inspection area satisfy all concerns about a person's citizenship or immigration status, an agent may still direct a vehicle to a secondary inspection area and further question the occupants on the basis of reasonable suspicion that a crime has been committed").

The Supreme Court has explained that this reasonable suspicion standard reflects a balancing of "the importance of the governmental interest at stake, the minimal intrusion of a brief stop, and the absence of practical alternatives for policing the border." *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975). Reasonable suspicion may be based on "a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation." *United States v. Lopez-Martinez*, 25 F.3d 1481, 1484 (10th Cir. 1994) (quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). Although "the necessary level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence, the Fourth Amendment requires some minimal level of objective justification." *Cantu*, 87 F.3d at 1121 (10th Cir. 1996) (internal quotation marks omitted). The ultimate assessment of reasonable suspicion must be made in light of the experience of the border agent and based on the totality of the circumstances. *See United States v. Gandara-Salinas*, 327 F.3d 1127, 1130 (10th Cir. 2003).

Here, the record establishes that the border patrol agents possessed reasonable suspicion that Mr. Velasco had committed an immigration violation and were therefore authorized to detain him at the secondary inspection area and further question him there. In particular, Mr. Velasco's passenger (Mr. Rios) had unquestionably violated the bounds of his border crossing permit and thus could have been taken into custody. This, combined with (1) the possibly fraudulent I-

94 permit, [1] (2) the story about meeting the ailing aunt at a gas station, (3) Mr. Rios's contention that he had lost all identification because of a recent robbery; (3) Mr. Velasco's nervousness in handing over the receipt for the purchase of the vehicle, and (5) the presentation of a receipt for the sale of the vehicle (rather than the vehicle's insurance and registration) justified Agent Bowcutt's decision to continue the detention.

We are not persuaded by Mr. Velasco's contention that the border agent's observations supported only the detention of Mr. Rios. Unquestionably, the suspicious behavior of a passenger is a factor that an agent may consider in deciding whether to detain the driver. *See, e.g., United States v. Kopp*, 45 F.3d 1450, 1453-54 (10th Cir. 1995) (considering the behavior of a passenger in the reasonable suspicion calculus). Moreover, we have noted above, some of Agent Bowcutt's observations concerned Mr. Velasco himself (e.g., Mr. Velasco's nervousness and Mr. Velasco's handing Agent Bowcutt a receipt rather than proof of insurance and registration).

4. The canine inspection and subsequent search

Finally, Mr. Velasco also challenges the canine inspection and subsequent search of his vehicle. He argues that "[w]hatever 'consent' [he] may have given

---

[1] The district court noted that during the course of questioning, Mr. Rios admitted that the I-94 permit was fake.

to these actions, it was incurably tainted by the illegal detention." Aplt's Br. at 8. In light of our conclusion that Mr. Velasco's detention was lawful, this argument fails. We further note that, aside from his unpersuasive challenges to his detention, Mr. Velasco identifies no evidence in the record undermining the validity of the consent.

## III. CONCLUSION

Accordingly, we AFFIRM the district court's denial of Mr. Velasco's motion to suppress.

Entered for the Court,


Robert H. Henry
Circuit Judge