FILED
United States Court of Appeals
Tenth Circuit

July 25, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JESSE ALONZO ARJON,

      Defendant - Appellant.

No. 13-2231
(D.C. No. 2:12-CR-03187-RB-2)
(D. N. M.)

**ORDER AND JUDGMENT**[*]

Before **MATHESON**, **EBEL**, and **McHUGH**, Circuit Judges.

On November 14, 2012, United States Border Patrol Agent Humberto Flores stopped Jesse Arjon, who was driving a black Chevrolet Silverado in southern New Mexico. Agent Flores asked Mr. Arjon a few questions and obtained Mr. Arjon's permission to search his cell phone and vehicle. After a pat-down search revealed a second cell phone in Mr. Arjon's pocket, Agent Flores searched that phone with Mr.

---

[*]After examining Appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Arjon's permission and discovered suspicious text messages. Agent Flores told Mr.

Arjon he would have to take him to the Border Patrol station. Mr. Arjon then made

several incriminating statements admitting to his role in a drug smuggling operation.

A federal grand jury indicted Mr. Arjon on one count of possession with the intent

to distribute 50 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1),

841(b)(1)(C), and 18 U.S.C. § 2, and one count of conspiracy to do so, in violation of 21

U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Mr. Arjon moved to suppress his statements

and other incriminating evidence, arguing the initial stop and his continued detention

violated his Fourth Amendment rights. The district court denied his motion. Mr. Arjon

pled guilty to the indictment conditioned on his ability to appeal the district court's denial

of his motion to suppress.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A. *Factual History*[1]

In early November 2012, Border Patrol became aware of a 1995 gold Toyota

Camry in the Santa Theresa, New Mexico area that was allegedly linked to a load of

narcotics. The car eluded Border Patrol on November 5, 2012, at the Stanco Metal

---

[1] These facts are taken from the district court's Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Suppress. ROA, Vol. IV at 11-20. We accept the district court's findings of facts unless clearly erroneous. *See United States v. Hunter*, 663 F.3d 1136, 1141 (10th Cir. 2011). Mr. Arjon does not challenge the district court's factual findings.

Products warehouse, a common loading zone for narcotics just 350 yards north of the United States/Mexico border.

On November 14, 2012, at 8:30 p.m., a 1995 gold Toyota Camry crossed the border near Santa Theresa. Border Patrol agents on shift were instructed to watch for the Camry. They noticed the Camry parked outside the Stanco Metal warehouse, stopped it as it was driving away on Domenici Highway, searched the vehicle, and found three duffel bags filled with marijuana.

At the same time, two other agents, Agent Flores and his partner, were patrolling Domenici Highway in an unmarked patrol vehicle. The plain-clothed agents were aware of the instructions to look for the Camry. They came upon Mr. Arjon's black Chevrolet Silverado moving 25 miles per hour in a 55 mile-per-hour zone.

Agent Flores started surveilling the Silverado. He noticed Mr. Arjon would drive slowly along Domenici Highway for a few miles, make a U-turn, and drive back along the same stretch of highway, repeating this behavior several times. Mr. Arjon also would pull over to the side of the road, turn off his lights, wait for two or three minutes, and then resume driving back and forth on the highway. The area surrounding this stretch of highway is almost entirely desert. Several miles away the highway leads to an industrial district, a residential district, and the county airport.

Agent Flores received word agents had stopped the Camry and had found drugs inside, but he did not know where the Camry had been stopped. Approximately five minutes later, around 9:30 p.m., he stopped Mr. Arjon in the Silverado. Agent Flores

testified before the district court it was common practice for drug couriers to use "scout" or "lead" vehicles to guide the "load" vehicle carrying the drugs to its destination. Because he knew about the drugs found in the Camry, he surmised the two vehicles were connected. He thought the Silverado's unusual driving pattern was consistent with attempting to evade surveillance.

Agent Flores approached the Silverado at the driver's window. Speaking Spanish, he identified himself as a Border Patrol agent and asked Mr. Arjon about his identity and immigration status. Mr. Arjon provided a driver's license identifying him as Jesse Alonzo Arjon. Agent Flores asked Mr. Arjon what he was doing. Mr. Arjon stated he had just entered the United States and was arguing with his girlfriend. Because Mr. Arjon was alone in the vehicle, Agent Flores inferred Mr. Arjon was arguing on the phone with his girlfriend.

Agent Flores asked Mr. Arjon to step out of the vehicle. Mr. Arjon complied. He asked to look at Mr. Arjon's cell phone, and Mr. Arjon consented. Agent Flores did not find phone calls or text messages that looked like they were to or from a girlfriend, but noticed several other calls made on the phone. Mr. Arjon denied having a second cell phone. Agent Flores next obtained Mr. Arjon's consent to search the Silverado.

Agent Eduardo Silva arrived in a marked vehicle. He noticed Mr. Arjon was calm but fidgety, unable to stand still, and repeatedly turned to look at the agents after being directed multiple times to place his hands on the back of the Silverado. Agent Silva thought Mr. Arjon might have been looking for an escape route and, concerned for officer

safety because drug smugglers tended to be armed, decided to conduct a pat-down search of Mr. Arjon. Agent Silva told Mr. Arjon that he was going to pat him down and handcuff him for the safety of all parties, to which Mr. Arjon responded, "That's fine." ROA, Vol. IV at 17.[2] He then performed the pat-down search and felt a hard object in Mr. Arjon's jacket. Concerned it might be a weapon, he removed the object—which turned out to be a second cell phone—and handed it to Agent Flores.

Agent Flores requested and received permission from Mr. Arjon to search the phone. Agent Flores found a text conversation between Mr. Arjon and "Yiyo" in Spanish between 8:54 p.m. and 9:42 p.m. that evening, arranging for them to meet. One message from Yiyo stated, "The border are here." *Id*. at 18. These messages supported Agent Flores's suspicion that the Camry and Silverado were linked. He told the other agents, "We have enough to take him in." *Id.* at 19.

Mr. Arjon then started to make incriminating statements, saying he was sorry, it was the first time he had done something like this, and he was only doing it to get more money for the holidays. The agents handcuffed Mr. Arjon and put him in Agent Silva's marked car to be taken to the station. After the officers read him his *Miranda* rights, Mr. Arjon made more incriminating statements during his interview at the station.

B. *Procedural History*

A federal grand jury indicted Mr. Arjon on one count of possession with the intent

---

[2] Despite some contradictory testimony, the district court concluded Mr. Arjon was not actually handcuffed until later.

to distribute 50 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2, and on one count of conspiracy to do so, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846.

Mr. Arjon moved to suppress his statements and other incriminating evidence, contending the initial stop and his continued detention violated his Fourth Amendment rights.

The district court denied his motion, holding there was reasonable suspicion for the initial stop and the resulting detention also was reasonable.[3] Mr. Arjon pled guilty to the indictment conditioned on his ability to appeal the district court's denial of his motion to suppress. He timely filed his notice of appeal.

## II. **DISCUSSION**

Mr. Arjon contends the district court erred when it denied his motion to suppress because (1) Agent Flores lacked reasonable suspicion to stop his vehicle and (2) the stop was unreasonable in duration and scope.

### A. *Standard of Review*

In reviewing a district court's denial of a motion to suppress, we view the evidence in the light most favorable to the Government and accept the district court's

---

[3] In his motion to suppress, Mr. Arjon also argued his incriminating statements were elicited in violation of the Fifth Amendment. The district court determined the statements were spontaneous—not made in response to custodial interrogation—and therefore did not violate Mr. Arjon's Fifth Amendment rights. Mr. Arjon does not appeal this ruling.

factual findings unless clearly erroneous. *See United States v. Hunter*, 663 F.3d 1136, 1141 (10th Cir. 2011); *United States v. Karam*, 496 F.3d 1157, 1161 (10th Cir. 2007).

We review de novo the ultimate determination of the reasonableness of a search or seizure under the Fourth Amendment. *Karam*, 496 F.3d at 1161.

## B. *Reasonable Suspicion to Stop Mr. Arjon*

Mr. Arjon contends the district court erred in concluding Agent Flores had reasonable suspicion to stop his vehicle.

### 1. **Legal Background**

The Fourth Amendment protects against "unreasonable searches and seizures," U.S. Const., amend. IV, including investigatory stops and detentions, *see United States v. Sharpe*, 470 U.S. 675, 682 (1985); *United States v. Cheromiah*, 455 F.3d 1216, 1220 (10th Cir. 2006). Mr. Arjon "bears the burden of establishing that the challenged stop violated the Fourth Amendment." *Cheromiah*, 455 F.3d at 1220.

Like other law enforcement officers, a Border Patrol agent must possess reasonable suspicion to stop a vehicle: "Except at the border and its functional equivalents, officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" that the occupants have violated a law. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975); *Cheromiah*, 455 F.3d at 1220. Reasonable suspicion "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S.

-7-

266, 274 (2002). But it must rise above "[i]nchoate suspicions and unparticularized

hunches." *United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1997).

In deciding whether a Border Patrol agent had sufficient reasonable suspicion to

stop a vehicle in compliance with the Fourth Amendment, we have considered:

> (1) characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) aspects of the vehicle, such as a station wagon with concealed compartments; and (8) the appearance that the vehicle is heavily loaded.

*United States v. Gandara-Salinas*, 327 F.3d 1127, 1130 (10th Cir. 2003) (quoting *United

States v. Monsisvais*, 907 F.2d 987, 990 (10th Cir. 1990)); *see also Brignoni-Ponce*, 422

U.S. at 884-85.

We look at these factors as part of "the totality of the circumstances—the whole

picture[] must be taken into account. Based upon that whole picture the detaining

officers must have a particularized and objective basis for suspecting the particular

person stopped of criminal activity." *Cheromiah*, 455 F.3d at 1221 (quotations omitted).

Although the factors, in isolation, may be "consistent with innocent travel . . . taken

together they [may] amount to reasonable suspicion." *United States v. Sokolow*, 490 U.S.

1, 9 (1989). Agents are "entitled to make an assessment of the situation in light of [their]

specialized training and familiarity with the customs of the area's inhabitants." *Arvizu*,

534 U.S. at 276.

2. **Analysis**

The district court determined "the stop of Mr. Arjon's vehicle was clearly supported by specific, articulable facts that would generate suspicion in the mind of a reasonable officer." ROA, Vol. IV at 22. The court found ten facts supported reasonable suspicion: (1) Mr. Arjon was driving close to the border; (2) the area around the road was desolate; (3) the area is a known drug-smuggling corridor; (4) Mr. Arjon's driving behavior was inconsistent with usual traffic patterns on that road; (5) Agent Flores knew marijuana had been found contemporaneously in another vehicle in roughly the same area; (6) Agent Flores knew drug smuggling often involves a guide vehicle; (7) Mr. Arjon was driving very slowly; (8) Mr. Arjon made four U-turns and drove the same stretch of road four times; (9) Mr. Arjon twice pulled to the side of the road and turned off the vehicle's lights; and (10) Agent Flores perceived Mr. Arjon's pulling to the side of the road as attempts to evade law enforcement. *Id.* at 22-23. Considering the totality of the circumstances, we agree there was reasonable suspicion to stop Mr. Arjon's vehicle.

Mr. Arjon argues his driving behavior and Agent Flores's "hunch" about the connection between his vehicle and the Camry were insufficient to give rise to reasonable suspicion. This argument fails for two reasons.

First, Mr. Arjon's driving patterns, the characteristics of the area, and the vehicle's proximity to the border established reasonable suspicion for the stop. Even if Agent Flores had not been aware of the Camry, he still saw the Silverado driving slowly back and forth and stopping on a remote stretch of highway widely known as a drug-

-9-

smuggling corridor only a few miles from the border. Agent Flores noticed the Silverado would pull over and turn off its lights, possibly to evade law enforcement.

Second, Agent Flores's suspicion of the Silverado's connection to the Camry was based on his "specialized training and familiarity with the customs of the area's inhabitants." *Arvizu*, 534 U.S. at 276. He knew drug smugglers often used lead vehicles to help guide the vehicle carrying the drugs to its destination and to distract law enforcement if necessary. He knew the Camry had crossed the border that evening, Border Patrol had stopped the Camry, and agents had discovered marijuana in the car. He also knew the Camry was suspected of involvement in other drug smuggling activity. Based on this information, his suspicion that the irregularly-driven Silverado was a potential lead vehicle was more than "[i]nchoate suspicions and unparticularized hunches." *Wood*, 106 F.3d at 946.

For these reasons, we conclude there was reasonable suspicion to stop Mr. Arjon.

C. *Reasonable Suspicion for Investigative Detention*

Mr. Arjon argues the Border Patrol agents exceeded the permissible scope of the stop when they no longer had any question about Mr. Arjon's immigration status and found no one else in the vehicle.

1. **Legal Background**

An investigative detention of a vehicle and its occupants must be "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995) (quoting *Terry v.*

*Ohio*, 392 U.S. 1, 20 (1968)).  The detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop."  *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality op.); *see also United States v. Rosborough*, 366 F.3d 1145, 1148 (10th Cir. 2004).

"Occupants of a vehicle may be detained further if, during the course of a roving patrol stop, the Border Patrol agent develops an objectively reasonable and articulable suspicion that the occupants are engaged in some other illegal activity . . . ."  *Cheromiah*, 455 F.3d at 1222.  Officers have "wide discretion to take reasonable precautions to protect [their] safety."  *United States v. Rice*, 483 F.3d 1079, 1084 (10th Cir. 2007).

As with an initial stop, the totality of the circumstances determines whether there was reasonable suspicion sufficient to continue the detention.  *See Arvizu*, 534 U.S. at 273.

2. **Analysis**

The district court held that because "the initial stop was predicated on Agent Flores['s] reasonable belief that the driver of the black Silverado was involved in drug trafficking . . . Agent Flores acted reasonably in questioning Mr. Arjon about his identity and his erratic driving."  ROA, Vol. IV at 24.  The district court recounted how each question and search led to more suspicion justifying each law enforcement action during the stop until arrest.  We agree reasonable suspicion supported the duration and scope of the investigatory detention.

Mr. Arjon's sole argument appears to be that the stop became unreasonable as

soon as Agent Flores was satisfied that Mr. Arjon's presence in the United States was legal. Mr. Arjon does not challenge the agents' subsequent actions, including the searches of the car and the cell phones and the pat down.

Mr. Arjon correctly notes that an investigative detention of a vehicle must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Botero-Ospina*, 71 F.3d at 786 (quoting *Terry*, 392 U.S. at 20). The initial stop here was based on suspicion of drug trafficking, not an immigration violation. Agent Flores could ask questions and take actions to address these suspicions. *See Royer*, 460 U.S. at 500. He was not limited to asking about immigration concerns.

Agent Flores asked Mr. Arjon about his driving behavior, which Mr. Arjon attributed to his arguing with his girlfriend. Because Mr. Arjon was the sole occupant of the Silverado, Agent Flores deduced any such argument must have been by phone. Agent Flores asked and received consent to search Mr. Arjon's phone. The apparent lack of calls or text messages to or from a girlfriend caused Agent Flores to remain suspicious when Mr. Arjon denied having a second cell phone. Agent Flores requested and received permission to search the vehicle. All of these actions were geared to determine whether Mr. Arjon was involved in drug trafficking and were "necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500.

Agent Silva thought Mr. Arjon might be armed and dangerous and conducted a pat-down search, which produced Mr. Arjon's second cell phone. The district court concluded Agent Silva had reasonable suspicion to pat down Mr. Arjon, and Mr. Arjon

does not challenge this conclusion. With Mr. Arjon's consent, Agent Flores searched the second cell phone and discovered suspicious text messages. At this point, the agents arrested Mr. Arjon—again, an action Mr. Arjon does not challenge.

We conclude the duration and scope of the stop was based on reasonable suspicion. The agents tailored their actions to effectuate the purpose of the stop—to resolve suspicions about Mr. Arjon's involvement in drug smuggling.

III. **CONCLUSION**

For the foregoing reasons, we affirm the district court's denial of Mr. Arjon's motion to suppress.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge